UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Allstate Insurance Company,
as subrogee of Philomenia Mascia,
Phyllis Mascia and Antoinette Mascia-Bello,

                          Plaintiff,         CV-06-3870
                                             (CPS)

          - against -

Michael Choi, Sung Ho Shin Architect, P.C.,   MEMORANDUM
Sung Ho Shin Construction, Inc., NYST         OPINION AND
Construction, Inc., Ancor Construction        ORDER
Services, Inc., and Soo J. Kim, individually
and d/b/a SJ Construction, Inc.,

                          Defendants.

----------------------------------------X


SIFTON, Senior Judge.

     On August 10, 2006, Plaintiff Allstate Insurance Company

("Allstate"), as a subrogee of Philomenia Mascia, Phyllis Mascia

and Antoinette Mascia-Bello (collectively, "Mascias"), filed a

complaint against defendants Michael Choi, Sung Ho Shin

Architect, P.C., Sung Ho Shin Construction, Inc., NYST

Construction, Inc. ("NYST"), Ancor Construction Services, Inc.

("Ancor"), and Soo J. Kim, individually and d/b/a SJ

Construction, Inc. ("SJ").  In this complaint, Allstate alleged

that its subrogors had suffered damages resulting from the

construction activities of the defendants, which Allstate, as the

subrogors' insurer, had reimbursed and which Allstate now seeks

to recover from defendants.  Now before this Court are

defendants' motion to dismiss or abstain and Allstate's motion to strike defendants' affirmative defenses. For the reasons set forth below, the defendants' motion is denied and Allstate's motion is granted in part and denied in part.

## Background

The following facts are taken from the parties' submissions. Disputes are noted.

### *Allstate Complaint*

On August 10, 2006, Allstate, as a subrogee[1] of the Mascias, filed its complaint asserting diversity jurisdiction. The complaint alleges that plaintiff is a corporation organized and existing under the laws of Illinois, that it has its principal place of business in that state and that all defendants are all citizens of New York.[2]

In the complaint, Allstate states that during 2005 the Mascias owned a parcel of land at 20 Havemeyer Street in Brooklyn, New York which was insured by Allstate for property loss and damage. According to the complaint, defendant Michael

---

[1] "Subrogation is the principle by which an insurer, having paid losses of its insured, is placed in the position of its insured so that it may recover from the third party legally responsible for the loss." *Winkelmann v. Excelsior Ins. Co.,* 85 N.Y.2d 577, 581 (N.Y. 1995).

[2] Defendants do not dispute this fact.

Choi owned land at 22 Havemeyer Street which abuts the Mascias'
property and that defendants, while engaged in construction work
at 22 Havemeyer Street, caused damage to the Mascias' property,
forcing the Mascias to "incur repair expenses and additional
living expenses" in excess of $118,090. Under the terms of the
Mascias' insurance policy, Allstate reimbursed the Mascias an
amount "in excess of $118,090" for the repairs and losses
sustained. It now seeks to recover that amount, alleging five
causes of action: (1) negligence; (2) breach of contract; (3)
ultrahazardous activity; (4) trespass; and (5) malpractice.[3]

*Related State Court Actions*

In July 2005, Joseph Peluso filed a complaint against
defendants Michael Choi and NYST[4] in Kings County Supreme Court
seeking $5,000,000 for damage allegedly caused to property at 24
Havemeyer Street as the result of the construction work. The
Peluso complaint also seeks $1,000,000 in lost rental income.
Defendant Michael Choi thereafter commenced a third-party action
against Soo J. Kim, the principal of NYST, in the Peluso action.

In March 2006, Leanna Jaramillo, Anita Jaramillo, Ana
Jaramillo, Luis Jaramillo and subrogor Phyllis Mascia filed a

---

[3] The fifth cause of action was only asserted against Sung Ho Shin
Architect, P.C.

[4] The Peluso complaint also includes a defendants named Joon Hwa Choi,
not a party to this action.

complaint against defendants Michael Choi and SJ[5] in Kings County
Supreme Court alleging that the Jaramillos, who resided at 24
Havemeyer Street, and Phyllis Mascia, who resided at 20 Havemeyer
Street, sustained damage to property, as well as emotional,
psychological and physical injuries and other economic damage as
a result of the construction work performed by the defendants.[6]

In April 2006, Allstate subrogors Antoinette Bello and
Phyllis Mascia also filed a complaint against Michael Choi, Sung
Ho Shin, NYST and Ancor[7] in Kings County Supreme Court. That
complaint alleges that Antoinette Bello and Phyllis Mascia were
damaged in the amount of $2,500,000 each since they were forced
to vacate the premises at 20 Havemeyer Street, where they
resided, due to the damage caused by defendants' construction
activity next door. Defendant Sung Ho Shin thereafter commenced
a third-party action against Ancor and Soo J. Kim in the
subrogors action.

*Present Motions*

Defendant NYST filed the present motion to dismiss or

---

[5] The complaint also includes defendants named Joon Hwa Choi, AIEC
Archispace Corp and CNY Contracting Corp., who are not parties to this
action.

[6] According to NYST the Jaramillo plaintiffs have filed a motion to
amend their complaint to include NYST.

[7] The complaint also includes a defendant named Sang Tae Kim, not a
party this action.

abstain on October 10, 2006. Defendants Michael Choi and Sung Ho Chin Architect, P.C. thereafter filed answers to the complaint on October 18, 2006. Chin thereafter also filed a motion to dismiss, incorporating the arguments made by NYST.[8] Allstate filed a motion to strike several of the affirmative defenses of Chin and Choi on October 30, 2006.

## Discussion

The defendants argue that Allstate's complaint should be dismissed or, in the alternative, that this Court should abstain from hearing Allstate's claim.

## I. Allstate's Status as Subrogor[9]

Defendants argue first that the case should be dismissed since Allstate has no right of subrogation unless the entire debt owed by the defendants has been paid by Allstate to the subrogors, the Mascias, referring to claims made against them by the Mascias in state court which Allstate has not reimbursed. The argument is without merit.

An insurer's subrogation rights accrue upon payment of

---

[8] Choi submitted an affidavit and memorandum in support of NYST's motion but did not himself file a motion to dismiss.

[9] Defendants do not state the rule of civil procedure under which they move to dismiss on these grounds. Apparently, this motion is pursuant to Federal Rule of Civil Procedure 17, alleging that Allstate is not a "real party in interest." See Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the real party in interest").

> the loss . . . . At that point, an insurer who has paid
> the policy limits possesses the derivative and limited
> rights of the insured and may proceed directly against
> the negligent third party to recoup the amount paid.
> This is so even though the insured's losses are not
> fully covered by the proceeds of the policy.

*Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d 577, 582 (N.Y. 1995);

*see also Harleysville Worcester Ins. Co. v. Hurwitz*, 2005 WL

774166, at *5 (S.D.N.Y. 2005) ("It is well established that an

insurer has a right of subrogation, or, in other words, that it

can 'stand in the shoes' of its insured to seek repayment from a

third party whose wrongdoing caused the loss to the insured which

the insurer was obligated to cover").

It is undisputed that Allstate received a signed claim from

Phyllis Mascia which states that the "whole loss and damage" was

$99,042, and that it paid the Mascias on the basis of that

claim.[10]  Even if the Mascias are able to claim additional

damages caused by the defendants beyond the amount paid, Allstate

has a right to recover the amount paid as a subrogee.


II. Indispensable Parties

Defendants next argue that, pursuant to Federal Rule of

Civil Procedure 19, the Mascias are "indispensable" parties who

must be joined and that since the Mascias are citizens of New

York State and cannot be joined without destroying diversity and

---

[10] At oral argument, counsel for Allstate clarified that the $118,090
figure reflected the property damage payments and payments for "alternative
living expenses."

thus depriving this Court of subject matter jurisdiction, the
case must be dismissed for failure to join indispensable
parties.[11]

> A party is indispensable under Rule 19(a) if:
> (1) in the person's absence complete relief cannot be
> accorded among those already parties, or (2) the person
> claims an interest relating to the subject of the
> action and is so situated that the disposition of the
> action in the person's absence may (I) as a practical
> matter impair or impede the person's ability to protect
> that interest or (ii) leave any of the persons already
> parties subject to a substantial risk of incurring
> double, multiple, or otherwise inconsistent obligations
> by reason of the claimed interest.

Fed. R. Civ. P. 19(a). "If the case falls within one of these
three Rule 19(a) categories and joinder of an absent party would
destroy diversity jurisdiction, the trial court must [then]
consider whether, under Rule 19(b), the federal action should go
forward without the absent party or be dismissed."
*Arkwright-Boston Manufacturers Mutual Insurance Company v. City
of New York,* 762 F.2d 205, 208-09 (2d Cir. 1985)
("*Arkwright-Boston II*").  In this case, none of the Rule 19(a)
categories apply.

The facts of the present case are similar to those which
faced the district court in *Arkwright-Boston Manufacturers Mutual
Insurance Company v. City of New York,* 1984 WL 1263 (S.D.N.Y.
1984) ("*Arkwright-Boston I*"), which was affirmed by the Second

---

[11] Defendants state that they bring this claim under Federal Rule of
Procedure 12(b)(1), 12(b)(6) and 12(b)(7).  The motion is appropriately made
under Rule 12(b)(7) for "failure to join a party under Rule 19."

Circuit in *Arkwright-Boston II*.  In that case, an insurance
company brought a diversity suit in federal court to recover the
more than $300,000 paid to the insured, who himself was seeking
$100,000 from the same defendants in state court, a sum which
represented his deductible.  The defendant sought to dismiss the
diversity action pursuant to Rule 12(b)(7), on the grounds that
the insured was an indispensable party whose joinder would
destroy diversity.  The court denied the motion, holding that the
absence of the insured from the litigation did not prevent the
grant of complete relief between the insurance company and the
defendant.  *Id.* at *2.  The court also held that the insured was
"fully protected" by his ability to file a state court action.
*Id.*  The court further held that there was no risk of double
recovery since the insurance company was suing to recover the
amount paid and the insured was only suing to recover his
deductible; the court also noted that just because the defendant
may be collaterally estopped from denying liability during a
state trial if found liable in federal court was not a reason to
dismiss under Rule 19.  *Id.*

Similarly, in this case, analysis of the Rule 19(a) factors
require a conclusion that the Mascias are not indispensable
parties.  The absence of the Mascias from this action will not
interfere with the granting of complete relief as between
Allstate and the defendants.  Resolution of the action between

Allstate and the defendants for the amounts paid by Allstate on the policy will not impede the Mascias' ability to pursue their state court remedies.  Finally, there is no risk of inconsistent obligations, since under New York State's collateral-source rule, N.Y. C.P.L.R. § 4545©,[12] any damages awarded to the Mascias in state court for property damage will be reduced by the amounts already paid to them by Allstate. *See Corbin v. Grand Union Co.,* 1997 WL 739583, *8 (S.D.N.Y. 1997) (C.P.L.R. § 4545 "requires the court to 'set off' damages awarded for particular items of economic loss by the amount of corresponding collateral source payments).  Simply put, "[t]he fact that the defendants may be required to defend more than one action arising from the same tort is not grounds for finding the insured an indispensable party to its insurer's partial subrogation action." *Arkwright-Boston II*, 762 F.2d at 209.

Although "[t]his conclusion is consistent with a line of authorities which hold that the insured is not an indispensable party to a federal court action brought by a partially subrogated

---

[12] This statute reads, in relevant part:
In any action brought to recover damages for personal injury, injury to *property* or wrongful death, where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance . . . . If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding . . . .
N.Y. C.P.L.R. § 4545(c) (emphasis added).

insurer," defendants argue that under New York state law, multiple causes of action for damages that arise from a single occurrence cannot be "split" into more than one case and must be adjudicated as one. *See* Siegel, N.Y. Prac. § 220 (4th ed. 2006). According to the defendants, under this rule the claims for damages in state court by the Mascias must be joined to the claims for damages in federal court by Allstate to prevent splitting. However, the Second Circuit in *Arkwright-Boston II* has already concluded that there is no problem of "splittng" in this type of case, stating that "[w]hen there are separate claims against the party responsible for a loss suffered by an insured and an insurer, there is no unlawful splitting." *Arkwright-Boston II*, 762 F.2d at 209. The Second Circuit also cited Siegel, N.Y. Prac. § 220 (4th ed. 2006), which states that "[w]here . . . an insured is paid for part of a loss by an insurer, and then sues the person who caused the loss for only the uninsured part, a later suit by the insurer to recover the part that it paid will not be deemed a splitting." Moreover, a recent New York appellate division decision also supports this view. *See Byers v. Estate of Tudge,* 499 N.Y.S.2d 19, 20 (N.Y. App. Div. 1986) ("[Insured party's] interest and that of the insurer, though arising out of the same transaction, are distinct and cognizable" and therefore cases were not improperly split); *see also* 1 N.Y. Jur. 2d Actions § 45("where a plaintiff, having

been paid for part of his or her loss by an insurer, brings an
action against the defendant for the balance of such loss, and
the insurer then brings an action against the defendant to
recover the part of the loss paid by the insurer, the
proscription against splitting a cause of action has been held
not to apply so as to bar the insurer's action").[13]  Accordingly,
since Allstate's action for money it has paid out and seeks to
recover is distinct from that of whatever claim the Mascias may
believe they still have for property damage, they have not been
improperly split.[14]  For these reasons, the Mascias are not

---

[13] Defendant has cited two cases to support his argument, neither of
which disturbs the judgment of this court or the Second Circuit.  In *Clarcq v.
Chamberlain Mobile Home Transport, Inc.* the state court noted that once the
insured has sued, "a later suit by the insurance company for the amount so
paid *may* be barred by the rule against splitting a cause of action." 294
N.Y.S.2d 550, 555 (N.Y.Sup. 1968) (emphasis added).  However, the court never
reached a decision about the context in which the rule against splitting may
apply, as it found that there was no issue of splitting claims since the
defendant in that case had effectively waived the argument. In *Townsend v.
Halbert*, the state trial court said that when an insurance company makes
partial payment for damages suffered by an insured, "the cause of action
against the defendant is split between the [insured] and the insurance
carrier, [and] the latter is a necessary and proper party to this action . . .
. Unless the insurance carrier is brought in there is a defect in the parties
to this action caused by the nonjoinder." 54 N.Y.S.2d 501, 503 (N.Y. Sup.
1944).  To the extent this case is applicable to the facts before this Court,
it was effectively overruled by *Byers*, discussed above; the *Townsend* court sat
in Chenango County, which is in the Third Department in New York, and *Byers*
was decided by the Appellate Division, Third Department.

[14] I note here that is highly questionable whether any of the Mascias
actually believes that they have a claim for property damage over and above
what Allstate has already paid.  The only reference to such a claim for
'property damage' is in the Jaramillo complaint, which alleges that Phyllis
Mascia "sustained damage to property, emotional, psychological and physical
injuries . . . . " It appears that this phrase was simply cut-and-pasted from
the allegations of her co-plaintiffs.  Nowhere else is there any indication
that Allstate's payments were insufficient to cover the entire amount of
property damage.  Indeed, according to the "Proof of Loss" statement, Phyllis
Mascia was covered up to $293,000 - if there was property damage over the
$99,042 which she claimed, there is no apparent reason why she should would
not have claimed that from Allstate.

indispensable parties to this action and the motion to dismiss on that ground is denied.


III. Colorado River Abstention

Defendants also request that this court exercise its discretionary power and abstain on the basis of so called *Colorado River* doctrine, which establishes standards for discretionary abstention when federal and state courts exercise concurrent jurisdiction. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800 (1976). Under this doctrine, "[t]he mere fact that parallel proceedings are pending in state court is insufficient to justify abdicating the 'virtually unflagging obligation' to exercise federal jurisdiction." *Gregory v. Daly,* 243 F.3d 687, 702 (2d Cir. 2001) (quoting *Colorado River Water Conservation Dist,* 424 U.S. at 817). To justify abstention, there must be "exceptional circumstances." *Colorado River Water Conservation Dist,* 424 U.S. at 813. The district court's "task in cases such as this is not to find some substantial reason for the exercise of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to *justify the surrender* of that jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983) (emphasis in original)

(quoting *Colorado River Water Conservation Dist,* 424 U.S. at 817, 819).

*Colorado River Factors*

The following factors must be considered in evaluating discretionary abstention: "(1) assumption of jurisdiction over a res; (2) inconvenience of the forum; (3) avoidance of piecemeal litigation; (4) order in which the actions were filed; (5) the law that provides the rule of decision; and (6) protection of the federal plaintiff's rights." *F.D.I.C. v. Four Star Holding Co.,* 178 F.3d 97, 101 (2d Cir. 1999) (internal citations and quotations omitted). The court's determination "does not rest on a mechanical checklist, but on a careful balancing of [these] important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 362 (2d Cir. 1985) (internal citations and quotations omitted). As the court in *Woodford v. Community Action Agency of Greene County, Inc.* noted:

> [since] the balance is heavily weighted in favor of the
> exercise of jurisdiction . . . . the facial neutrality
> of a factor is a basis for retaining jurisdiction, not
> for yielding it. For example, with respect to the
> first . . . factor, the absence of a res points toward
> exercise of federal jurisdiction. Similarly, with
> respect to the second . . . factor, where the federal
> court is just as convenient as the state court, that
> factor favors retention of the case in federal court."

239 F.3d 517, 522 (2d Cir. 2001)  (internal citations and quotations omitted).


1. Jurisdiction over a Res

In the present case, there is no property over which this or any other court has jurisdiction.  Accordingly, this factor favors the retention of jurisdiction.


2. Convenience

The state court for Kings County where the other proceedings are being held is a few blocks away from the Eastern District federal courthouse in Brooklyn, so the choice of a federal forum does not inconvenience either party. *See Arkwright-Boston I,* at *4 (since the state and federal courthouses face each other across the street, the is no relatively more convenient forum). Therefore, this factor too favors retention of jurisdiction.


3. Piecemeal Litigation

The defendants note that there are three state court actions involving the same location, the same facts and events, and similar claims to each other and to this action; "in essence, all four actions are the same."  Moreover, they argue that abstaining will allow the cases to be consolidated in state court and avoid further litigation regarding claim preclusion.

While these facts weigh in favor of abstention, they are
hardly extraordinary.  In fact, they are the types of issues
which are present in nearly every case of concurrent proceedings.
The threat that parallel proceedings in these cases could lead to
claim or issue preclusion is present "whenever parties litigate
similar claims in two forums concurrently." *Prosperity Realty,*
*Inc. v. Haco-Canon,* 724 F.Supp. 254, 257 (S.D.N.Y. 1989)
(finding, in a case involving multiple concurrent state cases,
that the "threat in this case is not enough to cause this Court
to abstain from meeting its 'virtually unflagging obligation' to
exercise its jurisdiction").[15]  The fact that there are multiple
state court proceedings, rather than just one, is of less
significance because the state court cases have not been
consolidated, and not certain that they will indeed be
consolidated.  Accordingly, remains a risk of piecemeal
litigation at the state court level even if this Court were to
abstain.[16]

_____

[15] *Arkwright-Boston II,* cited by the defendant, is not inopposite.
There, the court noted that the issue of claim preclusion could breed
additional litigation which "could burden the parties for years to come."
*Arkwright-Boston II*, 762 F.2d at 211.  However, in that case, the court noted
that the issues in the case were "complex" and that the state court was in the
process of consolidating "hundreds of claims and numerous parties," across
more than fourteen actions. *Id.*  In the present litigation, there are only
seven parties, asserting a total twenty five causes of action, many of which
overlap and none of which appear to be anything more than traditional state
law causes of action, such as negligence and intentional infliction of
emotional distress. Any litigation as to issue of claim preclusion is unlikely
to take substantially longer than it would in any other parallel proceeding.

[16] In *Arkwright-Boston II*, the state courts had already begun the
process of consolidation by assigning a single judge, making it "appear likely
that the numerous claims . . . will be consolidated for all purposes" and that

4.  Order of Jurisdiction

This factor depends on "how much progress has been made in the . . . actions." *Moses H. Cone Memorial Hospital*, 460 U.S. at 3.  The defendants argue that while the federal case is merely at the pleadings stage, the Peluso action is well beyond that - for instance, the parties to that case have already engaged in "extensive discovery" and are scheduled to begin depositions. However, neither Allstate nor its subrogors are parties to that action, and it does not appear that any progress at all has been made in the cases brought by Allstate's subrogors involving the property at 20 Havemeyer Street; if this Court abstained from this case, Allstate's action would begin at square one in the state court.  Accordingly, while some related state court proceedings have progressed, there appears to be a long way to go before the state court cases are ready for trial.  In this case, Allstate, at the direction of the Magistrate Judge, is in the process of filing a motion for default against defendant Ancor. In addition, the Magistrate Judge has established a timetable for discovery,[17] at least one of the defendants, Shin, has already

_____

plaintiff's federal claim would be consolidated along with the state court actions if the federal court abstained. *Arkwright-Boston II*, 762 F.2d at 211.

[17] It appears that the discovery timetable was established to comply with Local Rule 83.10, which requires compulsory arbitration in a case where the damages alleged are less than $150,000 and sets a 90 day limit on discovery.  Although defendants may move to have the case exempted from arbitration and that motion, if granted, may require a new discovery order to be filed, this discovery order is at least a step in the direction of

served an automatic disclosure pursuant to Rule 26, and Allstate
has already served an expert report to the defendants.  Given
these facts, the state court cases are certainly no "further
along the path to resolution" than the federal case, and thus
this factor weighs against abstention. *Arkwright-Boston II*, 762
F.2d at 211.


5.  Governing Law

New York state law provides the rule of decision in this
case.  However, that fact is "a truism in diversity cases" and
"does not militate strongly against the exercise of federal
jurisdiction." *Prosperity Realty, Inc.*, 724 F.Supp. at 257; *see
Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325,
328 (2d Cir. 1986)  (only "in some rare circumstances may the
presence of state law issues . . . weigh in favor of . . .
surrender" of federal jurisdiction).  In fact, "[t]he source of
the law to be applied is only an important factor when federal
law issues exist in a case, and in that event the existence of
such issues weighs in favor of the exercise of federal
jurisdiction . . . . the fact that only state law issues are
involved . . . does not support [a defendant's] motion."
*Prosperity Realty, Inc.,* 724 F.Supp. at 257 (internal citations
and quotations omitted).  Here, though the defendants say the

---

progress. *See* Local Rule 83.10(d)(1) and (e)(2).

issues are "complex," the claims put forward by Allstate all
appear to be straightforward issues of state law, involving
negligence, breach of contract, strict liabilty, trespass and
malpractice which resulted in property damage. *See Bethlehem
Contracting Co.*, 800 F.2d at 328 ("Bethlehem's breach of
contract and tortious interference claims present no novel or
unique issues of law").  While this Court may have to construe
state building codes referred to Allstate's complaint to
determine whether the defendants were negligent, which tips the
scales slightly in favor of abstention, there is no argument that
interpreting these codes will be particularly challenging.[18] *See
Arkwright-Boston II,* 762 F.2d at 211 (finding that the fifth
element "tips the scales" toward abstention since it involved
"serious questions of state law such as whether a party may
recover in tort for a purely economic loss, absent physical
injury . . . and the construction of state and municipal
building, safety, and fire codes").

6. Protection of Federal Plaintiff's Rights

     "This factor, like choice of law, is more important when it
weighs in favor of federal jurisdiction." *Bethlehem Contracting
Co.*, 800 F.2d at 328.  In evaluating this element, "federal

---

[18] Defendants do not reference the building codes in their briefings on
this motion or explain why the issues involved in Allstate's complaint are
"complex."

courts are to determine whether the parallel state-court
litigation will be an adequate vehicle for the complete and
prompt resolution of the issues between the parties." *Village of*
*Westfield v. Welch's*, 170 F.3d 116, 124 (2d Cir.1999).   As noted
above, there is no timetable for the consolidation and resolution
of these cases in state court, and in two of those cases a
discovery schedule does not appear to have been set.   When
contrasted with the possibility of resolving this case through
the expedited arbitration procedure available in this district,
it appears that the most likely option for a prompt resolution of
this matter is for it to remain in federal court. *See Id.* (where
district court was aware of the slow progress of state court
proceeding, it did not have the discretion to find that this
factor weighed in favor of abstention).


*Weighing the Factors*

       Here, only factors 3 and 5 favor abstention and in neither
of those cases is the argument compelling or particularly unique.
Indeed, the only issue which is not present in every other
situation involving parallel proceedings in diversity actions is
the existence of multiple state law suits.   However, that fact
alone is hardly so "extraordinary" as to demand abstention,
especially when the state court cases have yet to be consolidated
and abstention may result in a significant delay in the

resolution of this case.  Accordingly, the motion for abstention is denied.


## IV. Allstate's Motion to Strike Affirmative Defenses

Allstate has moved to strike three of the affirmative defenses listed in Choi's answer and one of the affirmative defenses listed in Shin's answer.  Motions to strike defenses are "not favored." *Carter-Wallace, Inc. v. Riverton Laboratories, Inc.,* 47 F.R.D. 366, 368 (S.D.N.Y. 1969).  For the plaintiff to succeed on a motion to strike affirmative defenses, "the Court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defenses succeed." *Id.*  Moreover, "[i]n examining the defenses, the Court must accept the matters well pleaded as true and should not consider matters contained outside the pleadings." *Id*.


## 1. Choi's Third Affirmative Defense

In Choi's Third Affirmative Defense, he asserts that his liability to the plaintiff for non-economic damages is limited, under N.Y. C.P.L.R. § 1601 (referred to as "Article 16"), to his "equitable share," determined according to the relative culpability of all other persons contributing to that non-

economic loss.[19]  As Allstate rightly notes, it appears that all

the damages they are requesting at this point are "economic

damages," directly related to the property damage suffered by the

Mascias.  However, it is conceivable that some of what was paid

by Allstate also covered non-economic losses as well.[20]  Since

this question will be resolved easily after discovery and since I

anticipate no prejudice to Allstate in denying the motion at this

point, the motion is denied without prejudice. *See Alternative

Thinking Systems, Inc. v. Simon & Schuster, Inc.,* 853 F.Supp.

791, 800 (S.D.N.Y. 1994) (motion to strike denied as premature

when filed before discovery completed); *Orb Factory, Ltd. v.

Design Science Toys, Ltd.,* 1999 WL 191527, at *19 (S.D.N.Y. 1999)

("at the filing of the instant motion, discovery was by no means

complete. Because [defendant's] affirmative defenses may raise

issues of fact and law, the motion to strike [the] affirmative

---

[19] The statute modifies the common law rule on joint and several
liability and limits liability for non-economic damages. In relative part, the
statute reads:
> when a verdict or decision in an action or claim for personal
> injury is determined in favor of a claimant in an action involving
> two or more tortfeasors jointly liable or in a claim against the
> state and the liability of a defendant is found to be fifty
> percent or less of the total liability assigned to all persons
> liable, the liability of such defendant to the claimant for
> non-economic loss shall not exceed that defendant's equitable
> share determined in accordance with the relative culpability of
> each person causing or contributing to the total liability for
> non-economic loss.
N.Y. C.P.L.R. § 1601.

[20] I note here that Allstate paid almost $20,000 more than the amount
requested in Phyllis Marcias claim form and has not provided this court with
any explanation for the difference.

defenses is denied").


2. Choi's Fourth Affirmative Defense

In Choi's Fourth Affirmative Defense, he states that "upon information and belief . . . [some of Allstate's losses] will, with reasonable certainty be replaced of [sic] indemnified inwhole [sic] or in part from a collateral source as defined in Section 4545 of the CPLR."  Accordingly, the amount of such collateral source income should offset any amount awarded to the defendant.  While it again appears unlikely that Allstate, the insurer, will receive any collateral source income, at this stage of the case it is not inconceivable that Allstate itself has reinsurance contracts from which it might recover and to which Article 16 might apply.  As with the Article 16 defense, this question will easily be resolved after discovery and there appears no prejudice to Allstate in denying the motion at this point.  Accordingly, the motion is denied without prejudice.


3. Choi's Fifth Affirmative Defense

In Choi's Fifth Affirmative Defense, defendant states that the "action should be dismissed" since, given the pending state court cases, this action "will not serve to resolve all of the claims filed in the [state court action] and will only serve to waste the judicial resources of this Court and require the

Defendant to litigate the same issues in two forums, causing the Defendant unnecessary legal expense."  Since this argument has been definitively rejected in this Court's rulings herein, there remain no questions of law or fact which are in dispute and no foreseeable circumstance under which the defendant could succeed. Therefore, the motion to strike this affirmative defense is granted.

4. Shin's First Affirmative Defense

In Shin's First Affirmative Defense, defendant states that the plaintiff "Stands in The Shoes" of the subrogor's, who are residents of New York.  In addition, "Subrogee maintains offices for the doing of business and in fact generates substantial income from the contracts of insurance sited within the State of New York . . . . As such, there is no true diversity of Citizenship herein."  The discussion above makes it clear that, as a legal matter, a subrogee can file a claim in federal court on the basis of diversity, even when the insured party who has been reimbursed is not diverse from the defendant. *See St. Paul Fire and Marine Insurance Company v. Universal Builders Supply*, 409 F.3d 73, 81 (2d Cir. 2005) ("in a diversity case in which both the insurer as subrogee and the insured are plaintiffs and the insurer has paid only part of the loss incurred by the insured, if the presence of either the insurer or the insured

destroys diversity, both the district court and the court of appeals have the authority . . . to drop the nondiverse party . . . order to preserve subject matter jurisdiction"). In addition, the fact that Allstate maintains offices and does business in New York, as defendant claims, does not make it a "citizen" of New York for diversity purposes. Under 18 U.S.C. § 1332©, a corporation is a citizen of the state "by which it has been incorporated" (in this case, Illinois) and the state "where it has its principal place of business" (again, Illinois). "The jurisdictional rule governing here is unambiguous and it is not amenable to judicial enlargement." *Lincoln Property Co. v. Roche*, 126 S.Ct. 606, 616 (2005).[21] Accordingly, since there is no question of law or fact which is in dispute and no foreseeable circumstance under which the defense could succeed, the motion to strike this defense is granted.

## Conclusion

For the aforementioned reasons, defendants' motion to dismiss or abstain is denied and plaintiff's motion to strike affirmative defenses is granted in part and denied in part.

---

[21] It appears that the defendant here was confusing the diversity requirement in federal court with New York's long arm statute, which allows courts in New York to assert personal jurisdiction over a foreign tortfeasor who "transacts any business within the state" or who "expects or should reasonably expect the act [causing the injury] to have consequences in the state and derives *substantial revenue* from interstate or international commerce." N.Y. C.P.L.R. § 302(a) (emphasis added).

The Clerk is directed to transmit a copy of the within to all parties and to the Magistrate Judge.


       SO ORDERED.

Dated:     Brooklyn, New York
             January 2, 2007


                  By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                      United States District Judge